**Exhibit B**

# BID PROCEDURES[1]

Fluid Routing Solutions Intermediate Holding Corporation and its affiliated debtors and debtors-in-possession[2] (collectively the "Debtors") have filed chapter 11 cases pending in the United States Bankruptcy Court in the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 09-10384 (CSS). By motion dated February 6, 2009 (the "Motion"), the Debtors seek, among other things, approval of the process and procedures set forth below (the "Bid Procedures") to effectuate the sale of the Acquired Assets (the "Transaction"). The Bid Procedures are designed to facilitate a full and fair bidding process to maximize the value of the Acquired Assets for the benefit of the Debtors' creditors and the bankruptcy estate. The Debtors agree to use their best efforts to have a hearing to approve the Bidding Procedures on or before February 17, 2009.

On or before March 12, 2009, as further described below, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") at which time the Debtors shall seek entry of an order (the "Sale Order") authorizing and approving the sale of the Acquired Assets (the "Proposed Sale") to FRS, Inc. (the "Stalking Horse Purchaser") or to the Successful Bidder (defined below).[3]

*Asset Purchase Agreement*

On February 5, 2009, the Debtors entered into an asset purchase agreement (the "Agreement") with the Stalking Horse Purchaser, pursuant to which the Stalking Horse Purchaser proposed to acquire the Acquired Assets. The assets to be purchased as part of the Transaction do not include the Excluded Assets. Pursuant to the Agreement, the Stalking Horse Purchaser would provide consideration for the Acquired Assets in an amount equal to the Purchase Price.[4] The Transaction contemplated by the Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Agreement (defined herein).

[2] The Debtors are the following entities: Fluid Routing Solutions Intermediate Holding Corp., Fluid Routing Solutions, Inc., Fluid Routing Solutions Automotive, LLC (f/k/a Mark IV Automotive, LLC), and Detroit Fuel, Inc.

[3] "Acquired Assets" shall mean substantially all of the Debtors' assets associated with the fuel systems business, as more fully set forth in the Agreement.

[4] "Purchase Price" means $11 million less certain payments and amounts as set forth in Section 3.1(a) of the Agreement.

## Bidding Process

*Participation Requirements*

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtors and their counsel, no later than March 6, 2009, the following items (collectively, the "Participation Requirements"):

(a) Confidentiality Agreement. An executed confidentiality agreement in form and substance reasonably acceptable to the Debtors (each a "Confidentiality Agreement"); and

(b) Proof of Financial Ability to Perform. The most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of the Proposed Sale, Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure evidencing the Potential Bidder's ability to close the Transaction, the sufficiency of which shall be determined by the Debtors in their reasonable discretion.

*Access to Due Diligence Materials*

Upon satisfaction of the Participation Requirements, the Debtors will afford each Potential Bidder (each to thereafter be deemed a "Qualified Bidder") due diligence access to the Acquired Assets; provided, however, that the Debtors will have no obligation to provide due diligence access after the Bid Deadline (defined below). The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access for Qualified Bidders.

*Bid Deadline*

The deadline for submitting bids by a Qualified Bidder shall be March 9, 2009, at 12:00 p.m. (Eastern Time) (the "Bid Deadline"). A Bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid to: (i) counsel to the Debtors, Morgan, Lewis & Bockius, LLP, 101 Park Avenue, New York, NY 10178, Attn: Neil E. Herman, Esq. and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801, Attn: Michael R. Nestor, Esq.; (ii) counsel to the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: T. Patrick Tinker; (iii) counsel to any statutory committee appointed in these chapter 11 cases (the "Committee") and (iv) counsel to the Stalking Horse Purchaser, Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, IL 60601, Attn: James A. Stempel, Esq., Kirkland & Ellis LLP, 153 E. 53rd Street, New York, NY 10022, Attn: Lisa G. Laukitis, Esq., and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 18th Floor, Wilmington, DE 19899, Attn: Robert Dehney, Esq. (collectively, the "Notice Parties"), by the Bid Deadline.

*Determination of Qualified Bid Status*

To be eligible to participate in the Bidding Process each Qualified Bidder must deliver to the Debtors a written offer so as to be received by the Bid Deadline and that complies with each of the following conditions:

(a) Modified Agreement. A Bid shall include a black-lined copy of the Agreement (the "Modified Agreement") to show all changes requested by the Bidder, including those related to the Purchase Price; provided, however, that the terms of the Modified Agreement are substantially the same or better than the terms of the Agreement.

(b) Acquired Assets. Each Bid shall be for all of the Acquired Assets; provided, however, that the Debtors may consider a combination of multiple Bids, each of which is for less than all of the Acquired Assets, so long as (i) such combination of Bids collectively offers an aggregate amount equal to the Minimum Initial Bid (defined below), and (ii) each Bid comprising such combination otherwise meets the requirements of a Qualified Bid (such combination of Bids, a "Combination Bid").

(c) Contingencies. A Bid may not be conditioned on obtaining internal approval or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement.

(d) Authorization to Bid. A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(e) Good Faith Deposit. Each Bid or Combination Bid must be accompanied by a cash deposit in an amount equal to $1,000,000 (the "Good Faith Deposit").

(f) Minimum Initial Bid Requirement. Each Qualified Bidder's Bid or Combination Bid shall have an initial minimum bid requirement equal to the sum of (i) the Purchase Price, (ii) the Expense Reimbursement, and (iii) $250,000 (the "Minimum Initial Bid").

(g) Other Evidence. Each Bid or Combination Bid must contain evidence satisfactory to the Debtors that the bidder is reasonably likely (based on availability of financing, experience and other considerations) to be able to timely consummate a purchase of the Acquired Assets if selected as the Successful Bidder (as defined below).

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtors' reasonable discretion (taking into account the terms and conditions of any assumed debt obligations), and that satisfies the Bid Deadline requirement above, shall

3

constitute a qualified bid ("Qualified Bid"). In the event that a Bid is determined not to be a Qualified Bid in accordance with the conditions set forth above, the Qualified Bidder shall be refunded its Good Faith Deposit and all accumulated interest thereon within three (3) business days after that determination.

*Bid Protections*

The Debtors have agreed that the Debtors must, in the circumstances enumerated in the Agreement, pay to the Stalking Horse Purchaser the Expense Reimbursement (defined in the Agreement). The payment of the Expense Reimbursement shall be governed by the provisions of the Agreement and the Bid Procedures Order.

**Auction**

In the event that the Debtors receive at least one (1) Qualified Bid (other than the Stalking Horse Purchaser) by the Bid Deadline, the Debtors shall conduct an auction (the "Auction") of the Acquired Assets to determine the highest and otherwise best bid with respect to the Acquired Assets. No later than March 10, 2009 at 4:00 p.m. (prevailing Eastern time), the Debtors will notify all Qualified Bidders of (i) the highest or otherwise best Qualified Bid, (the "Baseline Bid") and (ii) the time and place of the Auction. The Auction shall commence at 9:00 a.m. (prevailing Eastern time) on March 11, 2009 at the offices of Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178.

If, however, no such Qualified Bid other than that of the Stalking Horse Purchaser is received by the Bid Deadline, the Debtors will report the same to the Bankruptcy Court, will declare the Stalking Horse Purchaser the Successful Bidder and will proceed with the Transaction pursuant to the terms of the Agreement, upon entry of an order approving the sale of the Acquired Assets to the Stalking Horse Purchaser.

The Auction shall be conducted according to the following procedures:

*Participation in the Auction*

Only the Debtors, the Stalking Horse Purchaser, any representative of the Committee and any Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction. Only the Stalking Horse Purchaser and other Qualified Bidders may make any subsequent Qualified Bids at the Auction.

The Debtors and their professional advisors shall direct and preside over the Auction. Bidding at the Auction shall begin with the Baseline Bid, which, in the event such Baseline Bid is not that of the Stalking Horse Purchaser, shall be in an amount at least equal to the Minimum Initial Bid. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders and the Stalking Horse Purchaser. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid (as defined below).

*Terms of Overbids*

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. Any Qualified Bidder's initial Overbid shall be at least $250,000 in excess of the Baseline Bid and each subsequent Overbid must made in increments of at least $250,000 over the previous highest or best bid. Additional consideration in excess of the amount set forth in the Baseline Bid may include a combination of cash and assumed debt obligations; provided, however, any Overbid made by the prepetition secured lenders may be in the form of a credit bid to the extent permitted under section 363(k) of the Bankruptcy Code.

Each Overbid must comply with the conditions for a Qualified Bid set forth above other than the Minimum Initial Bid requirement. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher Qualified Bid as an Overbid. The Debtors shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

*Closing the Auction*

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors, in consultation with the Committee, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately determine, in the Debtors reasonable discretion (taking into account the terms and conditions of any assumed debt obligations) the highest or otherwise best offer for the Acquired Assets (the "Successful Bid") and the entity submitting such Successful Bid, the "Successful Bidder").

*Failure to Close*

In the event the Successful Bidder fails to consummate the sale as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtors shall: (i) retain the Successful Bidder's Good Faith Deposit as liquidated damages; and (ii) in consultation with the Committee, be free to enter into a new purchase agreement with the next most appropriate Qualified Bidder at the highest price bid by such Qualified Bidder at the Auction.

*Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

**Acceptance of Successful Bid**

The Debtors shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of

5

a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### Expense Reimbursement

To the extent the Stalking Horse Purchaser is entitled to the Expense Reimbursement pursuant to the terms of the Agreement, such payment shall not exceed $1,250,000.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on or before March 12, 2009.

### Return of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder shall be applied to the Purchase Price of such transaction at Closing. The Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until the Termination Date, and thereafter returned to the respective bidders. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

### Modifications

The Bid Procedures may not be modified except with the express written consent of the Debtors and the Stalking Horse Purchaser.

The Debtors, in their reasonable discretion, may (a) determine, which Qualified Bid, if any, is the highest or otherwise best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors.