IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                       :

In re:                    :
                       :    Chapter 11

FLUID ROUTING SOLUTIONS    :
INTERMEDIATE HOLDING CORP.,    :    Case No. 09-10384
a Delaware Corporation, et al.,    :
                       :    Jointly Administered
           Debtors.[1]    :
                       :

---------------------------------------------------------- x

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF THE DEBTORS' ASSETS RELATING TO THE FUEL SYSTEMS BUSINESS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated February 6, 2009 (the "Sale Motion") of the above-captioned

debtors and debtors-in-possession (the "Debtors") for the entry of an order pursuant to sections

105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

authorizing the Debtors to, *inter alia*, (i) enter into that certain asset purchase agreement, dated

as of February 6, 2009, between FRS Holding Corp. (collectively the "Purchaser"), and the

Debtors (the "Agreement", attached as Exhibit D to the Sale Motion), (ii) sell substantially all of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Fluid Routing Solutions Intermediate Holding Corp. (1438); Fluid Routing Solutions, Inc. (1367); Fluid Routing Solutions Automotive, LLC (f/k/a Mark IV Automotive, LLC); and Detroit Fuel, Inc. (4910). The address for each of the Debtors is 1935 Enterprise Drive, Rochester Hills, MI 48309.

K&E 14139833.6

their assets, associated with the Debtors' fuel systems business free and clear of all Liens[2], Claims, Encumbrances and Interests (defined herein), with such sale to be in accordance with the terms and conditions of the Agreement; (iii) assume and assign certain executory contracts and unexpired leases to the Purchaser; and (iv) granting related relief; and this Bankruptcy Court having entered an order dated February 19, 2009 (the "Bid Procedures Order" and attached as Exhibit 1 thereto, the "Bid Procedures") authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and Bid Procedures to consider higher or otherwise better offers for the Acquired Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction, Sale Hearing and the Assumption and Assignment Notice; (iii) procedures relating to the assumption and assignment of certain unexpired leases and executory contracts, including notice of proposed Cure Amounts; and (iv) the Expense Reimbursement (as defined in the Agreement); and the Bankruptcy Court having established the date of the Sale Hearing; and the Bankruptcy Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334;[3] and consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion, the Agreement, or the Order (A) Approving Bid Procedures Relating to the Sale of the Debtors' Assets Relating to the Fluid Routing Solutions Business, (B) Scheduling a Hearing to Consider the Sale, (C) Approving the Form and Manner of Notice of Sale by Auction, (D) Establishing Procedures for Noticing and Determining Cure Amounts and (E) Granting Related Relief as applicable.

[3] The "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

K&E 14139833.6

the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[4]

A. The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. The Bankruptcy Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Acquired Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D. The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

E. The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 102, 105, 363, and 365 of the Bankruptcy Code, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

---

[4]    All findings of fact and conclusions of law announced by the Bankruptcy Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

3

F.  On February 5, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.  As evidenced by the affidavits of services and publication filed with the Bankruptcy Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Bankruptcy Court, and in compliance with the Bid Procedures Order. Notice of the Sale Hearing was also published in The Wall Street Journal on February 24, 2009. The Debtors also gave due and proper notice of the assumption, sale, and assignment of each contract listed on the Assumption and Assignment Notice filed on March 6, 2009 (Docket No. 173) (the "Assumed Contracts" and the "Assumed Leases") to each non-debtor party under each such Assumed Contract and Assumed Lease. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts and Assumed Leases, or of the entry of this Order is necessary or shall be required.

H.  No section of any Assumed Contract or Assumed Lease which purports to prohibit, restrict, or condition the use, tradename or assignment of any such Assumed Contracts or Assumed Leases in connection with the proposed sale to the Purchaser shall have any force or effect.

4

I.     A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) the top 20 largest unsecured creditors of the Debtors; (iii) all taxing authorities having jurisdiction over any of the Acquired Assets subject to the sale, including the Internal Revenue Service; (iv) the Environmental Protection Agency; (v) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (vi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vii) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Acquired Assets; (viii) all Contract Parties; (ix) counsel to the Purchaser; and (x) all potential bidders previously identified or otherwise known to the Debtors (collectively, the "Notice Parties").

J.     Other parties interested in bidding on the Acquired Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Acquired Assets.

K.     The conditions of section 363(n) of the Bankruptcy Code have been satisfied.

L.     The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, sell the Acquired Assets and assume and assign the Assumed Contracts and Assumed Leases under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Acquired Assets if the sale is not consummated quickly; (ii) the Agreement constitutes the

5

highest or best offer for the Acquired Assets; (iii) the Agreement and the Closing (as defined in the Agreement) will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' business; and (iv) unless the sale. is concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement, creditors' recoveries may be diminished.

M.      The Bid Procedures set forth in the Bid Procedures Order were non-collusive, in good faith, substantively and procedurally fair to all parties.[5]

N.      The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Order. As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process was conducted in accordance with the Bid Procedures Order, the Debtors (i) afforded interested potential purchases a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets, and (iii) considered any bids submitted on or before the Bid Deadline.

O.      The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and

---

[5]      In the interest of full disclosure, the Purchaser, FRS Holding Corp. is an affiliate of Fluid Routing Solutions Holding Corporation, the non-debtor parent of the Debtors.

6

reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Acquired Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

P. The Purchaser is the Successful Bidder for the Acquired Assets in accordance with the Bid Procedures Order. The Bid Procedures obtained the highest value for the Acquired Assets for the Debtors and their estates.

Q. The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code with respect to all of the Acquired Assets. The Agreement was negotiated and entered into in good faith and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the sale transaction and transfer of the Acquired Assets, the Assumed Contracts and Assumed Leases to the Purchaser. The Purchaser is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.

R. The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Acquired Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement. No consents or approvals, other than as may be

7

expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

S.    The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Acquired Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Acquired Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Acquired Assets to the Purchaser and the assumption and assignment of the Assumed Contracts and Assumed Leases is a legal, valid and effective transfer of the Acquired Assets and any Assumed Contracts and Assumed Leases.

T.    The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

U.    Except as otherwise provided in the Agreement, the Acquired Assets shall be sold free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension (including liability asserted by the Pension Benefit Guaranty Corporation (the "PBGC")), or tax, decrees of any court or foreign or domestic governmental entity, or

8

charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates, claims (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, "Liens, Claims, Encumbrances and Interests") with such Liens, Claims, Encumbrances and Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and the Purchaser would not enter into the Agreement to purchase the Acquired Assets otherwise.

V.    The transfer of the Acquired Assets to the Purchaser is a legal, valid and effective transfer of the Acquired Assets, and, except as may otherwise be provided in the Agreement, shall vest the Purchaser with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Liens, Claims, Encumbrances and Interests. Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any

9

Liens, Claims, Encumbrances and Interests relating to the Acquired Assets being sold by the Debtors.

W.     The transfer of the Acquired Assets to the Purchaser free and clear of all Liens, Claims, Encumbrances and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests as all such Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Acquired Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in any of the Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances or Interests against the Purchaser, any of their assets, property, successors or assigns, or the Acquired Assets.

X.     The Debtors may sell the Acquired Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens, Claims, Encumbrances and Interests and (ii) non-debtor parties to the Assumed Contracts or Assumed Leases, who did not object, or who withdrew their objections, to the sale of the Acquired Assets and the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All objections to the Sale Motion have been resolved or overruled. Those holders of Liens, Claims, Encumbrances and Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are

10

adequately protected by having their Liens, Claims, Encumbrances and Interests, if any, attach to the proceeds of the sale of the Acquired Assets ultimately attributable to the property against or in which they claim or may claim any Claims, Encumbrances and Interests, with such Claims, Encumbrances and Interests being subject to treatment by separate order of this Bankruptcy Court.

Y.     Not selling the Acquired Assets free and clear of all Liens, Claims, Interests and Encumbrances would adversely impact the Debtors' estates, and the sale of Acquired Assets other than one free and clear of all Liens, Claims, Interests and Encumbrances would be of substantially less value to the Debtors' estates.

Z.     The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f) of the Bankruptcy Code, in connection with the sale and the assumption and assignment of the Assumed Contracts and Assumed Leases.  The Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts and Assumed Leases pursuant to section 365(b)(1)(C) of the Bankruptcy Code.  The Assumed Contracts and Assumed Leases are assignable notwithstanding any provisions contained therein to the contrary.  The Debtors have provided for the cures and/or other payments or actions required to assume and assign the Assumed Contracts and Assumed Leases to the Purchaser.  The assumption and assignment of the Assumed Contracts and Assumed Leases pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

11

AA.     In the absence of a stay pending appeal, the Purchaser is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

BB.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser or its affiliates and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser or its affiliates and the Debtors, there is no common identity between the Debtors and the Purchaser or its affiliates, there is no continuity of enterprise between the Debtors and the Purchaser or its affiliates, neither the Purchaser nor any of its affiliates is a mere continuation of the Debtors or their estates, and neither the Purchaser nor its affiliates constitute a successor to the Debtors or their estates. Other than the Assumed Obligations, neither the Purchaser nor its affiliates shall have any obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities, and the Debtors and the Committee will release and forever discharge the Purchaser and any of its affiliates, successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the Agreement.

CC.     The sale of the Acquired Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale does not constitute a *sub rosa* chapter 11 plan.

12

DD.    The total consideration provided by the Purchaser for the Acquired Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Acquired Assets.

EE.    The Purchaser is a secured creditor of the Debtors, holding valid Liens, Claims, Interests and Encumbrances in and against the Debtors and their estates arising in connection with the DIP Credit Agreement. The Purchaser holds an allowed, claim as of the date hereof in the superpriority amount of $9,726,000 plus accrued interest with respect thereto and any fees, expenses, costs and changes (the "Allowed Superpriority Claim"), and was authorized to credit bid any or all of such Allowed Superpriority Claim at the Auction.

FF.    The Purchaser's credit bid pursuant to the Agreement was a valid and proper offer pursuant to Bankruptcy Code §§ 363(b) and 363(k).

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein. The Sale Motion complies with all aspects of Local Rule 6004-1.

2.    All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response or request for continuance was not

13

otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.    Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

*Approval of Sale*

4.    The sale of the Acquired Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.    The sale of the Acquired Assets and the consideration provided by the Purchaser under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.    The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assumed Contracts and Assumed Leases as part of the sale of the Acquired Assets pursuant to section 365 of the Bankruptcy Code and this Order.

7.    Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any

14

reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Agreement, as the case may be.

8.     The Debtors are hereby authorized to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Acquired Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Acquired Assets or Assumed Obligations, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Bankruptcy Court. The Purchaser shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to their obligations to do so have been met, satisfied or waived.

9.     The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such

15

other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Bankruptcy Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

10.     The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the States of Delaware and Michigan, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the

16

implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

11. Effective as of the Closing, (a) the sale of the Acquired Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Acquired Assets notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Claims, Liens, Interests and Encumbrances of any kind, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of any Assumed Obligations by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Obligations to the Purchaser and divests the Debtors of all liability with respect to any Assumed Obligations.

*Transfer of Assets*

12. Except to the extent specifically provided in the Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell the Acquired Assets to the Purchaser. The sale of the Acquired Assets vests the Purchaser with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Claims, Liens, Interests and Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unified, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Claims, Liens, Interests and Encumbrances to attach only to the proceeds of the sale with the same priority, validity, force,

17

and effect, if any, as they now have in or against the Acquired Assets, subject to all claims and defenses the Debtors may possess with respect thereto. The Sale Motion shall be deemed to provide sufficient notice as to the sale of the Acquired Assets free and clear of Claims, Liens, Interests and Encumbrances in accordance with Local Rule 6004-1. Following the Closing Date, no holder of any Claims, Liens, Interests and Encumbrances in the Acquired Assets may interfere with the Purchaser's use and enjoyment of the Acquired Assets based on or related to such Claims, Liens, Interests and Encumbrances, or any actions that the Debtors may take in their chapter 11 cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

13. The provisions of this Order authorizing the sale of the Acquired Assets free and clear of Liens, Claims, Encumbrances and Interests and the Assumed Obligations, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

14. All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of said Acquired Assets to the Purchaser on the Closing Date.

15. On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances or Interests of any kind against the Acquired Assets, as such Liens, Claims, Encumbrances or Interests may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing

18

any Liens, Claims, Encumbrances or Interests in or against the Acquired Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances or Interests that the person or entity has with respect to the Acquired Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Acquired Assets prior to the Closing, and the Purchaser is authorized to file such documents after Closing.

16.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

17.     All of the Debtors' interests in the Acquired Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Acquired Assets to the Purchaser.

19

18. Except as expressly provided in the Agreement, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Acquired Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Acquired Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliate of the Purchaser.

19. Except as otherwise provided in the Agreement, on the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be necessary to release their respective interests or claims against the Acquired Assets, if any, as may have been recorded or may otherwise exist.

20. Except as otherwise expressly provided in the Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

*Assumed Contracts and Assumed Leases*

21. Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assumed Contracts and Assumed Leases and the assignment of

20

such agreements to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code.

22.    The Assumed Contracts and Assumed Leases shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Purchaser at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to the payment of all cures and/or other payments or actions required to assume and assign the Assumed Contracts and Assumed Leases to the Purchaser.

23.    Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract and Assumed Lease. The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

24.    Pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, the Debtors shall promptly pay or cause to be paid from the proceeds of the sale to the parties to any Assumed Contracts and Assumed Leases the requisite Cure Amounts, if any, set forth in the Assumption and Assignment Notice served by the Debtors on each of the parties to the Assumed Contracts and Assumed Leases, with respect to the assumption and assignment thereof. The Cure Amounts are hereby fixed at the amounts set forth in the Assumption and Assignment Notice served by the Debtors, or the amounts determined on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the Assumed Contracts and Assumed Leases are forever bound by such Cure Amounts and are hereby enjoined from taking any action against the Purchaser or the Acquired Assets with respect to any claim for cure under any Assumed Contract or Assumed Lease.

21

25.     All defaults or other obligations under the Assumed Contracts and Assumed Leases arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Amounts and the non-debtor parties to such contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Purchaser that any additional amounts are due or other defaults exist.

26.     Any provision in any Assumed Contract or Assumed Lease that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed Contracts and Assumed Leases shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any. No sections or provisions of any Assumed Contract or Assumed Lease that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts and Assumed Leases shall have any force and effect with respect to the transactions contemplated by the Agreement and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Assumed Contract or Assumed Lease pursuant to the terms of the Agreement in any respect constitutes a default under any Assumed Contract or Assumed Lease. The non-debtor party to each Assumed Contract and Assumed Lease shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract and Assumed Lease as of the applicable date of assumption

22

without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

27.     The Purchaser has satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assumed Contracts and Assumed Leases.

28.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Contracts and Assumed Leases occurring from and after Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

29.     The non-debtor parties shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to the Purchaser as a result of the assumption and assignment of the Assumed Contracts and Assumed Leases.

30.     J.R. Automation Technologies, LLC ("JRAT") asserts a lien (the "JRAT Asserted Lien") pursuant to the Michigan Special Tools Lien Act in the amount of $291,668.50 (the "JRAT Asserted Secured Claim") on certain special tools (the "JRAT Tools") fabricated and delivered by JRAT for use in the Debtors' operations. In satisfaction of the JRAT Asserted Secured Claim, the Debtors shall assume and assign to Purchaser the two purchase orders with JRAT (the "JRAT Purchase Orders") listed on Schedule 2.1(a)(o) of the Agreement ("Schedule 2.1(a)(o)") and shall pay to JRAT $291,668.50 (the "JRAT Cure Amounts") to cure all defaults under the JRAT Purchase Orders within 10 days of the date of this Order. Notwithstanding anything to the contrary in the Agreement, the JRAT Purchase Orders shall remain Assumed Contracts and shall not be removed from Schedule 2.1(a)(o). Notwithstanding anything herein

23

or the Agreement to the contrary, the JRAT Asserted Lien shall attach to the JRAT Tools and shall not be released or discharged until the JRAT Cure Amounts are paid in full to JRAT.

31.     Cure amount agreements (collectively, the "Cure Amount Agreements") have been entered into by and between the Debtors and the following non-Debtor counterparties (collectively, the "Cure Amount Agreement Counterparties") to certain Assumed Contracts: (i) Mehler Engineered Products, Inc.; (ii) Almond Products, Inc.; and (iii) Middletown Tube Works, Inc. and Phillips Manufacturing and Tower Company, doing business as Shelby Welded Tube. The Cure Amount Agreements, copies of which are annexed hereto as Exhibit 1, among other things, propose to resolve certain issues raised by the Cure Amount Agreement Counterparties with respect to the assumption and assignment of the respective Assumed Contracts to which they are a party. The Cure Amount Agreements are hereby approved.

*Additional Provisions*

32.     The proposed Settlement Agreement (the "Settlement Agreement") among the Debtors, the Purchaser, and Mark IV Industries, Inc. / Dayco Products, LLC (together, the "Mark IV Entities"), a copy of which is attached hereto as Exhibit 2, is hereby approved on an interim basis based upon the Debtors' summary of the same set forth on the record at the Sale Hearing; provided that: the Debtors shall serve notice and a copy of the Settlement Agreement upon the 2002 Service List within one (1) day after entry of this Order. If no objection to the Settlement Agreement is filed with the Court and served upon counsel for the Debtors, the Purchaser and the Mark IV Entities (at the addresses set forth for the Mark IV Entities in the notice provisions of the Settlement Agreement) by 5:00 p.m. (Eastern time) on Monday April 6, 2009 (the "Objection Deadline"), and the Debtors thereafter file a certification of counsel stating that no objection has

24

been timely filed, the Settlement Agreement shall be approved, and deemed approved, on a final basis pursuant to this Order effective as of April 7, 2009, without any further notice or hearing. If any objections to the Settlement Agreement are timely filed and served in accordance with the procedures set forth above in this paragraph, then the Court shall schedule and conduct a hearing to consider any such objections as soon as reasonably practicable. The Debtors, the Purchaser and the Mark IV Entities agree that, except as otherwise set forth in the Settlement Agreement with respect the period prior to approval of the Settlement Agreement, all of the Debtors', the Purchaser's and the Mark IV Entities' rights with respect to the various contracts and agreements referenced in the Settlement Agreement are fully and expressly reserved pending the Court's final determination with respect to the Settlement Agreement, including without limitation the Mark IV Entities' rights to object to the assumption by the Debtors, assumption and assignment to the Purchaser or rejection of any such contracts and agreements, and assert any cure, administrative or other claims with respect to such contracts and agreements, and the Debtors' and/or Purchaser's rights to contest any such objections or claims, which rights shall expire, to the extent not otherwise preserved in the Settlement Agreement, if, as and when the Settlement Agreement is ultimately approved by the Court pursuant to the procedures set forth in this paragraph.

33.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

34.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets

25

sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 cases or the consummation of the transaction contemplated by the Agreement.

35.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Obligations and as otherwise set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets. Consequently, all persons, Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Claims, Liens, Interests or Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Acquired Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Claims, Liens, Interests or Encumbrances or on account of any liabilities of the Debtors other than Assumed Obligations pursuant to the Agreement. All persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Claims, Liens, Interests or Encumbrances or cause of action against the Purchaser or the Acquired Assets for any liability associated with the Excluded Assets.

36.     The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Agreement, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1. Except to the extent the Purchaser assumes the Assumed Obligations pursuant to the Agreement, neither the purchase of the

26

Acquired Assets by the Purchaser or its affiliates, nor the fact that the Purchaser or its affiliates are using any of the Acquired Assets previously operated by the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations) for purposes of this provision, the term "affiliate" shall mean each entity that is treated as a single employer with the Purchaser for purposes of Section 414 of the Code, (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, (v) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations

27

arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Acquired Assets prior to Closing, and (ix) any litigation.

37.    Except to the extent expressly included in the Assumed Obligations, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance or Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Acquired Assets, the operation of the Debtors' fuel systems business prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance or Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates,

28

financial advisors and representatives (each of the foregoing in its individual capacity), or the Acquired Assets. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns in accordance with the terms of the Agreement.

38.     Other than the Assumed Obligations or as otherwise provided for in the Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities, and the Debtors and the Committee are deemed to release and forever discharge the Purchaser and any of its affiliates, successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the Agreement.

39.     Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Bankruptcy Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

40.     The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtors and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

41.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

42.     This Order and Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.

43.     Nothing in this Order or the Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Agreement authorizes the transfer or assignment to Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit with Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments. Nothing in this Order or the Agreement relieves or excuses Purchaser from any legal obligations of Purchaser to obtain and comply with environmental permits necessary to operate any acquired facilities after the date of entry of this Order. Nothing in this Paragraph shall affect any protection from liability for response costs incurred at any facility included in the Acquired

30

Assets that Purchaser may have under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, including as an "innocent landowner" or a bona fide prospective purchaser under sections 101(35) or 107(r) of CERCLA.

44.     The provisions of this Order are non-severable and mutually dependent.

45.     Nothing in any order of this Bankruptcy Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

46.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Sale Motion shall be deemed to provide sufficient notice of the Debtors' request for relief from stay. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

31

47.     This Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and any Assumed Contracts and Assumed Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims, Interests and Encumbrances.

48.     Notwithstanding anything in this order to the contrary, nothing contained in this Order shall release, diminish, prejudice or otherwise affect any Liens, Claim, Encumbrances and Interests, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, held by the bankruptcy estates or which the Committee would be entitled to assert on behalf of any of the Debtors or any of their estates (other than any Liens, Claims, Encumbrances and Interests, suits, damages, actions, causes of action remedies, and liabilities released pursuant to the *Final Order (I) Authorizing and Approving Debtors' Post-Petition Financing; (II) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; and (III) Modifying Automatic Stay* entered by this Court on March 16, 2009 or which related to the sale process with respect to the transactions contemplated by the Agreement, the Acquired Assets or the transfer of the Acquired Assets under the Agreement) against (i) Sun Capital Partners Management V, LLC, (ii) any affiliate of the Purchaser, or (iii) former and present officers, directors, members, investment

32

advisors, managed funds, attorneys, employees, partners, financial advisors and representatives of Debtor in their capacity as such.

Dated:    Wilmington, Delaware
               _March_ **26**, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

K&E 14139833.6