# Exhibit 1

Mehler Engineered Products, Inc.
Cure Amount Agreement

## AMENDMENT TO AGREEMENT

THIS AMENDMENT TO AGREEMENT ("Amendment") is made this __24__ day of __February__, 2009, by and between Mehler Engineered Products, Inc., a Virginia corporation ("Mehler") and Fluid Routing Solutions, LLC, a Delaware corporation ("Customer").

### RECITALS

A. Mehler and Customer entered a written Agreement dated April 22, 2008 ("Agreement") by which Mehler agreed to supply to Customer and Customer agreed to purchase from Mehler, certain treated cord/yarn products, subject to the terms of the Agreement.

B. The Agreement expires on February 28, 2009, unless extended by further written agreement of the parties.

C. Mehler and Customer have agreed to extend the Agreement through and including July 31, 2009, subject to the terms set forth below

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mehler and Customer agree as follows:

1. For purposes of this Amendment, the term "Products" shall have the meaning set forth in Section 1.1 of the Agreement, except that Exhibit A to the Agreement (which defines "Products" and "Specifications") is hereby amended to add as a Product- RP0543 ("RP0543"). Exhibit C to the Agreement (which sets forth the price of the Products) is also hereby amended to provide that the price for RP0543 will be "$4.58 USD/lb." The parties agree that, at such time as Mehler's current inventory of raw materials for manufacture of RP0542 has been exhausted, Mehler will cease manufacturing RP0542 and RP0543 will be ordered by Customer and manufactured by Mehler as a substitute for RP0542.

2. Subject to paragraph 5 below, the parties agree that the expiration date of the Agreement, as stated in the first sentence of Section 8.1 of the Agreement, will be July 31, 2009 rather than February 28, 2009.

3. The parties agree that, during the remaining term of the Agreement (as extended by this Amendment) Customer will purchase 100% of its requirements for the Products from Mehler and that such purchase obligation will replace and supersede the obligation previously stated in the Agreement for Customer to Purchase an annual "Minimum Quantity" of Products from Mehler.

4. Subject to paragraph 5 below, the parties agree that Customer's payment terms for all purchases of Products under the Agreement are <u>cash before delivery</u> (rather than net 25th prox., as stated in Section 4.2 of the Agreement), with payment to be made by wire transfer from Customer to

1

Mehler, and that Customer's failure to remit full payment in cash by wire transfer at least 2 days before any scheduled delivery date will constitute a breach of the Agreement by Customer, which will entitle Mehler to withhold further deliveries, stop any further manufacture of Products for Customer, terminate the Agreement immediately by written notice to Customer and recover damages, as allowed by law, for breach of the Agreement. Notwithstanding the foregoing, if the Agreement, as modified by this Amendment, is formally assumed by Customer, with bankruptcy court approval in Customer's bankruptcy case, and is then assigned to a third party that purchases substantially all of Customer's assets, with the third party assuming the obligations of Customer under the Agreement and this Amendment, then the payment terms for the third party's purchases of Products from Mehler will be net 20 days from date of invoice, on condition that any failure by the third party to remit payment when due, time being of the essence, will be a breach of the Agreement by the third party and will entitle Mehler to withhold further deliveries, stop any further manufacture of Products for the third party, terminate the Agreement immediately by written notice to the third party and recover damages, as allowed by law, for breach of the Agreement.

5. Customer will formally assume the Agreement, as modified by this Amendment, by: (a) including the Agreement (as modified by this Amendment) on the list of contracts to be assumed, with the list to be filed in Customer's bankruptcy case and provided to Mehler no later than March 3, 2009, and (b) obtaining bankruptcy court approval and confirmation of such assumption no later than March 20, 2009. If either of these assumption requirements is not met by the applicable deadline stated in this paragraph 5 (a) or (b), then Mehler shall be entitled to withhold further deliveries, stop any further manufacture of Products for Customer, terminate the Agreement immediately by written notice to Customer and recover its costs and expenses incurred in performing under the Agreement prior to termination.

6. Notwithstanding the foregoing requirement that Customer assume the Agreement and Customer's acknowledgement that the assumption of the Agreement requires full payment of all prepetition invoices pursuant to the Bankruptcy Code, Mehler will not require Customer to pay a portion of Customer's prepetition debt owed to Mehler in the amount of $117,790.56 for Products delivered prior to the filing of Customer's bankruptcy case, provided, however, that Mehler does not waive or release its right, as part of Customer's assumption of the Agreement, to payment of all of Mehler's invoices for Products delivered within twenty (20) days prior to the filing of Customer's bankruptcy case nor does Mehler waive its right to full payment of prepetition invoices for which it has received payment. The rights of both parties are preserved under the Bankruptcy Code.

7. Except as stated above, the Agreement shall remain in effect in accordance with its original terms and Mehler's manufacture and sale Products to Customer shall be governed by the terms of the Agreement, except that, to the extent any term in the Agreement is inconsistent with any term in this Amendment, the term in this Amendment shall control.

IN WITNESS WHEREOF the parties have caused this Amendment to be executed as of the date and year first above written.

2

MEHLER ENGINEERED PRODUCTS, INC.

By: _[signature]_

Title: Vice President

FLUID ROUTING SYSTEMS, INC.

By: _[signature]_

Title: V.P. Purchasing

Almond Products, Inc.
Cure Amount Agreement

DB02:7973090.1

068067.1001

# FIRST AMENDMENT TO SUPPLY AGREEMENT

This Amendment to the Supply Agreement is dated as of March 19, 2009 (the "Amendment"), by and between Almond Products, Inc., a Michigan corporation having an address at 17150 148th Avenue, Spring Lake, MI 49456 ("Almond"), and Fluid Routing Solutions, Inc., a Delaware corporation having an address at 1955 Enterprise Drive, Rochester Hills, MI 48309 ("Fluid Routing").

WHEREAS, the parties entered into that certain Supply Agreement[1] dated April 2, 2008 (the "Supply Agreement"), pursuant to which Fluid Routing agreed, among other things, to purchase certain goods from Almond (the "Products").

WHEREAS, on February 6, 2009 (the "Petition Date"), Fluid Routing and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, after reconciling amounts due and owing based on the parties' respective books and records, the parties agree that Fluid Routing owes Almond $367,385.57 for Products delivered prior to the Petition Date (the "Cure Claim").

WHEREAS, the parties hereto wish to (i) resolve certain claims against one another, and (ii) amend the terms of the Supply Agreement as provided herein;

NOW THEREFORE, the parties hereto agree as follows, intending to be bound hereby:

1. Fluid Routing shall use its best efforts to obtain Bankruptcy Court approval of the assumption and assignment of the Supply Agreement (which shall include this Amendment) and all purchase orders related thereto (the "Assumption and Assignment") to the third party (the "Purchaser") that purchases substantially all of the assets of Fluid Routing's fuel systems business. The Debtors shall, upon execution of this Amendment, amend their Schedule of Assumed Executory Contracts filed in conjunction with the sale of their fuel systems business to reflect the Assumption and Assignment, including cure obligations. Within three (3) days of entry of an order by the Bankruptcy Court approving the Assumption and Assignment, a cure payment shall be made to Almond by the Purchaser via wire transfer in the aggregate amount of $367,385.57 (the "Cure Payment").

2. Prior to the entry of an order by the Bankruptcy Court approving the sale of Fluid Routing's fuel systems business (the "Sale") and the Assumption and Assignment, the Debtors shall pay all undisputed invoices net 5 days prox paid once weekly by ACH transfer (invoices for product shipped week 1 will be paid on Monday of the following week). Upon execution of this agreement, FRS shall wire $6,753.92 to pay

---

[1] Any defined term referenced herein, but not separately defined herein, shall have the same meaning as provided in the Supply Agreement.

Almond for product shipped on February 6, 2009.

3. Upon entry of an order by the Bankruptcy Court approving the Sale and the Assumption and Assignment, the Purchaser shall pay all undisputed invoice amounts to Almond net forty-five (45) days ACH, subject to the rights of each party under applicable law, including, without limitation, Article 2 of the Uniform Commercial Code.

4. Upon the expiration of 180 days the entry of any order by the Bankruptcy Court approving the Sale, the Purchaser shall pay all undisputed invoice amounts to Almond net sixty (60) days ACH, subject to the rights of each party under applicable law, including, without limitation, Article 2 of the Uniform Commercial Code.

5. The Product pricing set forth in the Supply Agreement shall be reduced by two percent (2%) effective immediately upon the entry of an order by the Bankruptcy Court approving the Assumption and Assignment pursuant to the terms contained herein.

6. For the purpose of claims arising under 11 U.S.C. §§ 544-551, all amounts owing by the Debtors to Almond shall be deemed paid in full.

7. The effectiveness of this Amendment shall be contingent upon the entry by the Bankruptcy Court of an order approving the Assumption and Assignment pursuant to the terms of this Amendment. In the event no such order is obtained by May 1, 2009, this Amendment, including all recitals and provisions contained herein, shall be rendered of no force and effect whatsoever.

8. This Amendment amends and modifies the Supply Agreement and shall not be construed as a novation.

9. This Amendment may be executed in two or more counterparts, all of which shall be considered one and the same agreement. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of such counterparts is confirmed.

10. This Amendment together with the Supply Agreement (as amended by this Amendment) contains the entire agreement between the parties relating to the sale of the Products. Any oral representations or modifications concerning the Supply Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the party to be charged. Unless expressly modified herein, the Supply Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Amendment or have caused this Amendment to be signed by authorized members or managers, all as of the date first written above.

Fluid Routing Solutions, Inc.

By: /s/ Robert E. McConahy
Name: ROBERT E. McConahy
Title: V.P. Purchasing

Almond Products, Inc.

By: /s/ Joy Ponce
Name: Joy Ponce
Title: Vice President

Middletown Tube Works, Inc. and Phillips Manufacturing and Tower Company,
doing business as Shelby Welded Tube Cure Amount Agreement

# FIRST AMENDMENT TO SUPPLY AGREEMENT

This Amendment to the Supply Agreement is dated as of March 11, 2009 (the "Amendment"), by and between Middletown Tube Works, Inc. ("Middletown"), an Ohio corporation, and Phillips Manufacturing and Tower Company, doing business as Shelby Welded Tube ("Shelby") an Ohio corporation (collectively, the "Sellers") having an address at 2201 Trine Street, Middletown, OH 45044, and Fluid Routing Solutions, Inc., a Delaware corporation having an address at 1955 Enterprise Drive, Rochester Hills, MI 48309 ("Fluid Routing").

WHEREAS, the parties entered into that certain Supply Agreement[1] dated April 16, 2008 (the "Supply Agreement"), pursuant to which Fluid Routing agreed to purchase certain products from Sellers (the "Products"); and

WHEREAS, on February 6, 2009 (the "Petition Date"), Fluid Routing and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code");

WHEREAS, on February 6, 2009, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") issued an Order Pursuant to Sections 105, 362 and 506(b) of the Bankruptcy Code Authorizing the Debtors to Elevate Certain Prepetition Claims of Certain Critical Vendors to Administrative Priority (the "Administrative Priority Order") authorizing the Debtors to elevate the unsecured portion of any remaining prepetition claims of certain critical vendors to administrative priority status;

WHEREAS, on February 6, 2009, the Bankruptcy Court issued an Order Pursuant to Bankruptcy Code Sections 105(a), 503(b), and 507(a) Authorizing Debtors to Pay Certain Prepetition Claims of Suppliers and Vendors of Goods and Services Entitled to Administrative Priority (the "Administrative Payment Order") authorizing the Debtors to pay certain prepetition claims of providers of goods and services entitled to administrative priority pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code for those undisputed obligations arising from goods delivered, received, accepted by, or services provided to, the Debtors in the ordinary course of business within the twenty (20) days before the Petition Date in an amount not to exceed $3.6 million;

WHEREAS, the Parties hereto wish to amend the terms of the Supply Agreement as provided herein;

NOW THEREFORE, the parties hereto agree as follows, intending to be bound hereby:

1. Pursuant to 11 U.S.C. §503(b)(9), Fluid Routing shall pay one hundred percent (100%) (the "503(b)(9) Claim") of the amount due and owing to Sellers pursuant to the

---

[1] Any defined term referenced herein, but not separately defined herein, shall have the same meaning as provided in the Supply Agreement.

Supply Agreement for Products provided by Sellers to Fluid Routing between January 17, 2009 and February 5, 2009 (including $98,371.56 for Products provided by Middletown, and $12,531.88 for Products provided by Shelby) within thirty days of the entry of an order by the Bankruptcy Court approving the Amendment.

2. Sellers shall be granted an allowed administrative claim in Fluid Routing's Chapter 11 case for ninety percent (90%) of the outstanding amounts due and owing to Sellers pursuant to the Supply Agreement for Products provided by Sellers to Fluid Routing prior to January 17, 2009 (including $365,626.00 for Products provided by Middletown, and $86,694.76 for Products provided by Shelby).

3. In the event that there is a successful sale of Fluid Routing's Chapter 11 estate assets, this Amendment and the Supply Agreement shall be assumed and assigned by Fluid Routing to the successful purchaser at the time of closing of the sale, and any amounts owed or outstanding to Sellers at the time of such assumption and assignment shall be paid to Sellers as cure amounts pursuant to Section 365 of the Bankruptcy Code. Nothing in this Amendment is intended to affect the ability of Sellers to assert a cure claim under Section 365 of the Bankruptcy Code.

4. During the pendency of Fluid Routing's Chapter 11 case, Fluid Routing shall pay all undisputed invoice amounts net fifteen (15) days ACH.

5. Upon the effective date of any plan of reorganization approved by the Bankruptcy Court, and upon a showing of adequate of assurance of future performance by Fluid Routing, Fluid Routing shall entitled to receive from Seller invoice terms of net forty-five (45) days ACH.

6. Six (6) months, following the effective date of any plan of reorganization approved by the Bankruptcy Court, and upon a showing of adequate of assurance of future performance by Fluid Routing, Fluid Routing shall be entitled to receive from Seller invoice terms of net sixty (60) days ACH.

7. Except as modified by this Amendment, nothing in this Amendment shall effect the validity and existence of the Supply Agreement, *provided, however*, that nothing herein shall constitute an assumption of the Supply Agreement in Fluid Routing's Chapter 11 case pursuant to Section 365 of the Bankruptcy Code.

8. This Amendment may be executed in two or more counterparts, all of which shall be considered one and the same agreement. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of such counterparts is confirmed.

9. This Amendment, together with the Supply Agreement (as amended by this Amendment), contains the entire agreement between the parties relating to the sale of the Products. Any oral representations or modifications concerning the Supply Agreement, or any such other document, shall be of no force and effect excepting a subsequent modification in writing, signed by the party to be charged.

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Amendment, or have caused this Amendment to be signed by authorized members or managers, all as of the date first written above.

Fluid Routing Solutions, Inc.

By: *(signature)*
Name: Robert E McCurahy
Title: V.P. Turnt chas ing

Middletown Tube Works, Inc.

By: *(signature)*
Name: Angela R Phillips
Title: Vice President

Shelby Welded Tube.

By: *(signature)*
Name: Angela R Phillips
Title: Exec. V.P.



**Fluid Routing Solutions Inc.**
1955 Enterprise Drive
Office: (248) 853-8360
Rochester Hills, MI 48309

Memo of Understanding – Agreement to Review Supply Agreement Pricing

| | | | |
|---|---|---|---|
| To: | Angela Phillips | From: | R. E. McConahy |
| Title: | Vice President | Title: | Vice President, Purchasing |
| Company: | Middletown Tube | Company: | Fluid Routing Solutions |
| Phone: | 800-841-4207 | Phone: | 248-844-1125 |
| Email: | aphillips@middletowntube.com | Email: | bob.mcconahy@fluidrouting.com |

This memo confirms our discussion of today March 4, 2009 and our understanding regarding pricing and ongoing supply to Fluid Routing Solutions.

Fluid Routing Solutions has voluntarily filed a petition to reorganize under Chapter 11 of the U.S. Bankruptcy Code on February 6, 2009 in US Bankruptcy Court, Delaware District Court. Details have been provided to you in a separate mailing.

Fluid Routing Solutions, Middletown Tube and Shelby Tube have agreed that it is in the best interest of all parties to continue to do business on a going forward basis. To that end, we have signed an amendment dated March 5, 2009 to our existing April 16, 2008 Supply Agreement. The supply agreement revises pricing effective March 1, 2009. Pricing has been amended per the Supply Agreement.

The purpose of this memo is to document that material prices today are significantly lower than November 15, 2008 when the March 1, 2009 pricing was agreed. Subsequently, Middletown Tube and Shelby Tube agree to provide lower pricing to Fluid Routing Solutions upon the consumption of the current material which is estimated to be used by August 1, 2009. Middletown and Shelby will firm pricing as soon as practical, but it is agreed that pricing effective August 1, 2009 will not be less than 5% lower than the March 1, 2009 pricing.

Please acknowledge our understanding by your signature below and return by email today:

Signature: _[signed]_
Name: Angela R. Phillips
Title: Vice President
Date: 3/11/09